UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Wendy Evans et al.</u>

    v.                                    Civil No. 04-cv-103-JD
                                     Opinion No. 2005 DNH 132
<u>Taco Bell Corp.</u>


<u>O R D E R</u>

    Taco Bell Corp. has moved for summary judgment on the plaintiff's claims for injuries she allegedly suffered upon learning that an employee of a Taco Bell restaurant she and her family patronized had been diagnosed with Hepatitis A.  The plaintiff, Wendy Evans ("Evans"), who brought the suit as a putative class action, objects to summary judgment in its entirety.  Taco Bell has filed a reply to Evans's objection.

    Taco Bell has also moved to strike one of the declarations submitted in support of Evans's objection to summary judgment.  Finally, Taco Bell has moved for sanctions against Evans and her counsel on the ground that her previous objection to the summary judgment motion, which sought relief on the basis of Fed. R. Civ. P. 56(f) and which the court denied in an order of June 30, 2005, violated Fed. R. Civ. P. 11(b).  Evans has filed an objection to both the motion to strike and the motion for sanctions.  Taco Bell has made reply to the objection to the motion to strike.

Background

Taco Bell argues in its reply that Evans's memorandum
supporting her objection to the summary judgment motion fails to
comply with Local Rule 7.2(b)(2), which provides:

> A memorandum in opposition to a motion for summary
> judgment shall incorporate a short and concise
> statement of material facts, supported by appropriate
> record citations, as to which the adverse party
> contends a genuine dispute exists so as to require a
> trial.  All properly supported material facts set forth
> in the moving party's factual statement shall be deemed
> admitted unless properly opposed by the adverse party.

Rather than incorporating the "short and concise statement"
required by this rule, Evans's memorandum consists entirely of
argument as to the existence of what she views as genuine issues
of material fact precluding summary judgment on each of her
theories of recovery.

Although Evans supports each section of her argument with
record citations, this court has previously ruled that summary
judgment briefs that "go directly to arguing their positions,
referring to certain facts as they pertain to each section of
argument, rather than following the more customary (and helpful)
format of prefacing argument with a statement of all the
underlying facts of the case" fail to comply with Local Rule
7.2(b)(2)'s mandate for a "short and concise statement of
material facts."  Ulmann v. Anderson, 2004 DNH 73, 2004 WL

883221, at *1 n.2 (D.N.H. Apr. 26, 2004); see also Young v.
Plymouth State Coll., 1999 WL 813887, at *1 n.2 (D.N.H. Sept. 21,
1999) (noting that factual statement which includes "argument and
legal characterizations" does not comply with rule).  Because
Evans's memorandum objecting to the summary judgment motion does
not comply with L.R. 7(b)(2), all of the properly supported
material facts set forth in Taco Bell's memorandum in support of
the motion are deemed admitted for purposes of this order.[1]

Evans, her husband, and their three minor daughters consumed
food that she had purchased from the Taco Bell restaurant in
Derry, New Hampshire, for dinner on February 7, 2004.  Within
hours, the entire Evans family fell ill, suffering variously from
nausea, stomach pains, diarrhea, fever, dehydration, and
headaches.  These symptoms began to subside after four or five
days but persisted in less severe form for about two weeks.

Aside from a call to a doctor, who opined that the family
had probably been stricken by "one of those flu bugs that goes
around," Evans Dep. at 17, the Evanses did not seek any medical
care for these symptoms.  Just over a week after consuming the

---

[1]On multiple occasions over the course of this litigation,
the court has rebuked Evans's counsel for their disregard of the
Local Rules.  See 2005 DNH 104, 2005 WL 1592984, at *4 n.7
(D.N.H. June 30, 2004) (order on Evans's motion for Rule 56(f)
relief); 2004 WL 103995 (D.N.H. Apr. 21, 2004), at *2 n.1 (order
on Evans's first motion for remand).

Taco Bell food, however, two of Evans's daughters began experiencing a "scaly and bumpy rash" on their upper bodies.  Id. at 26.  Evans took her daughters to a doctor, who prescribed a cream and oral antibiotics during an initial visit and a different cream in a later visit.  The rash lasted for about a week.  Recovered from their maladies, the Evans family consumed food purchased from the Derry Taco Bell again on February 21, 2004.  After this meal, the Evanses felt "a bit sick" and underwent "the regular diarrhea type of stuff" but did not experience any other symptoms.  Id. at 42.  No physician has ever told Evans that the rash or any of the other symptoms she or any of her family members experienced during this time were related to eating food from Taco Bell.

On February 25, 2004, an employee of the Taco Bell restaurant in Derry, New Hampshire, was diagnosed with Hepatitis A.  That same day, Taco Bell notified the New Hampshire Department of Health and Human Services, which immediately began an investigation.  Following the investigation, Dr. Jesse F. Greenblatt, the chief of the Department's Bureau of Disease Control, recommended to the State Commissioner of Health and Human Services that he "issue a Health Advisory through the Health Alert Network and issue a public alert through the media." Greenblatt Aff. ¶ 7.  Greenblatt explains that these actions were

4

intended to "inform clinicians of a case of Hepatitis A in a food handler; advise of a public Hepatitis A . . . immunoglobulin clinic and to recommend additional vigilance regarding Hepatitis A screening." Id. ¶ 8.  The Department issued a notice to this effect on February 27, 2004, urging those who had patronized the Derry Taco Bell during a certain time period in February 2004, to receive immunoglobulin injections.[2]  At Taco Bell's expense, the Department set up a public clinic for this purpose at each of three different locations in southern New Hampshire.

Evans, her husband, and their three daughters all received immunoglobulin injections at one of the public clinics on or about February 29, 2004.  None of the Evanses was feeling ill at that time.  The inoculation Evans received "hurt because [it] had to go into a deep tissue muscle" in her arm, which continued to hurt for a few days.  Evans Dep. at 46.  She also recalls observing two of her daughters cry as a result of their inoculations and that each of her children continued to feel pain in her arm for more than a week afterward.  She does not recall, however, any other symptoms that she or her family experienced as

---

[2]Neither party points to any evidence in the summary judgment record which fixes the starting and ending dates of this period.  For purposes of this motion, the court will assume that the period ran from February 7, 2004, through February 21, 2004, as alleged in the complaint.

a result of the injections.

The Evans family also underwent testing for Hepatitis A, although it is unclear whether this occurred before or after their inoculations.[3]  Evans explains that her family "got tested because we were all scared and wanted to know" and because her youngest daughter needed the testing to enroll in a new kindergarten program.  Id. at 42.  The testing, which involved having blood drawn at the office of the Evans's family physician, cost almost $400 per person and was not covered by insurance. About a week after having the tests, the family received the results, indicating that none of them had Hepatitis A.

In fact, during the 180-day period following the diagnosis of Hepatitis A in the Derry Taco Bell employee, no cases of the disease arising from exposure to food from the restaurant were reported to the state Department of Health and Human Services. New Hampshire law at the time required any diagnosis of Hepatitis A to be reported to the department within twenty-four hours. N.H. Code Admin. R. Ann. He-P 301.02(a)(1)(I) (2004).  Given the passage of time since the employee's diagnosis, there will be no future occurrences of the disease arising from exposure to food

---

[3]The only evidence submitted on this point consists of excerpts from Evans's deposition in which she said she could not remember when the testing occurred.

from the Derry Taco Bell.  There is also no evidence that the infected employee contracted the disease at the restaurant.

Evans filed a declaration and petition for class action[4] in Rockingham County Superior Court against Taco Bell on March 11, 2004.[5]  At that point, Evans claimed to be "in fear and experiencing emotional trauma associated with the potential of contracting the disease" and from observing her children worry about contracting the disease.  Compl. ¶¶ 23-24.  In addition to the symptoms she experienced after eating food from the Derry Taco Bell on February 7, 2004, the complaint alleges that Evans had been suffering from persistent nausea, headaches, and a darkening of her urine "[s]ince learning of her family's possible exposure to Hepatitis A and receiving the inoculation . . . ." Id. ¶ 17.  Evans therefore claims "damages for physical pain, physical symptoms, fear and emotional distress."  Id. ¶ 24.  Her complaint asserts seven separate counts against Taco Bell: (I) negligence, (II) strict liability, (III), breach of fiduciary duty, (IV) breach of warranty, (V) violation of the New Hampshire Consumer Protection Act, Revised Statutes Annotated ("RSA")

---

[4]To avoid confusion, the court will use the term "complaint" to refer to this document.

[5]The complaint also named a number of other defendants whom Evans has since voluntarily dismissed from the case without prejudice.

358–A:2, (VI) vicarious liability, and (VII) enhanced
compensatory damages.

I.   Taco Bell's Motion to Strike

Taco Bell has moved to strike the declaration of Sue A.
Taylor, M.D., submitted by Evans in connection with her objection
to the motion for summary judgment.  Taylor is a physician in
Dover, New Hampshire, specializing in endocrinological disorders,
who has counted among her patients one Joan Karakostas.
Karakostas and her friend, Sherrie Daneau, ate at the Derry Taco
Bell once between February 7, 2004, and February 9, 2004, and
again on February 14, 2004.  Both claim to have begun suffering
"a variety of symptoms" in the weeks that followed, including
severe stomach pain, diarrhea, vomiting, aches and pains, and a
darkening of their urine.  Each submits a report of blood testing
conducted in mid–September, 2004, showing a positive result for
the presence of the Hepatitis A antibody.

Based on this testing, together with two other blood tests
Karakostas had previously undergone and the symptoms she claims
to have experienced starting in late February and early March,
2004, Taylor opines that, during that period, "Karakostas could
have been suffering from an acute case of Hepatitis A."  Taylor
Aff. ¶ 13.  Pursuant to Fed. R. Civ. P. 37(c)(1), Taco Bell moves

to strike this opinion, and Taylor's affidavit in its entirety as undisclosed expert testimony.  Evans protests that such a sanction is inappropriate because, inter alia, the court has yet to set any deadline for the disclosure of experts.

The court need not resolve this issue, however, because Taylor's opinion, and indeed the entire issue of whether Karakostas had Hepatitis A, is irrelevant.  Karakostas is not a party to this action--only Evans is.  To be sure, Evans has filed the case as a putative class action, seeking to represent everyone exposed to Hepatitis A as a result of patronizing the Derry Taco Bell in February, 2004.  But unless and until the court certifies such a class, the potential claims of putative class members other than the named plaintiff are simply not before the court.[6]  See generally 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 1.3, at 19-20 (4th ed. 2002).

Whether someone other than Evans or the members of her

---

[6]It is well-settled that, absent prejudice to the plaintiff, a court may decide a defendant's motion for summary judgment in a putative class action before taking up the issue of class certification.  See, e.g., Curtin v. United Airlines, Inc., 275 F.3d 88, 92-93 (D.C. Cir. 2001); Cowen v. Bank United of Tex., FSB, 70 F.3d 937, 941-42 (7th Cir. 1995); Wright v. Shock, 742 F.2d 541, 543-44 (9th Cir. 1984); Santana v. Deluxe Corp., 12 F. Supp. 2d 162, 179 (D. Mass. 1998); Ramirez v. DeCoster, 194 F.R.D. 348, 355 (D. Me. 2000).  Here, no prejudice to either Evans or the putative class members is apparent, and Evans has not objected to having the summary judgment motion decided before the motion for class certification.

family contracted Hepatitis A from eating at the Derry Taco Bell,
then, has no bearing on Taco Bell's motion for summary judgment,
which addresses the only claims that comprise the action at this
point--hers.  See Massey v. Zema Sys. Corp., 1998 WL 708913, at
*6 n.6 (N.D. Ill. Sept. 30, 1998) (deciding pre-certification
summary judgment motion by examining claims as they related only
to named plaintiffs rather than to other putative class members);
accord Rutan v. Republican Party of Ill., 868 F.2d 943, 947 (7th
Cir. 1989) ("Because no class of plaintiffs . . . [was]
certified, only the named plaintiffs . . . are before this court.
Therefore, we treat plaintiffs' claims as being brought solely by
the named plaintiffs" in reviewing motion to dismiss for failure
to state claim) (citation omitted), rev'd in part on other
grounds, 497 U.S. 62 (1990).  The proferred evidence tending to
show that Karakostas (or Daneau) had Hepatitis A simply cannot
create a genuine issue of material fact.  Accordingly, Taco
Bell's motion to strike Taylor's affidavit is denied as moot,
since the court has found it to be irrelevant.


II.  Taco Bell's Motion for Summary Judgment

       A.  Standard of Review

       On a motion for summary judgment, the moving party has the
burden of showing the absence of any genuine issue of material

10

fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
If the movant does so, the court must then determine whether the
non-moving party has demonstrated a triable issue.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  In ruling on a
motion for summary judgment, the court must view the facts in the
light most favorable to the non-moving party, drawing all
reasonable inferences in that party's favor.  E.g., J.G.M.C.J.
Corp. v. Sears, Roebuck & Co., 391 F.3d 364, 368 (1st Cir. 2004);
Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004).

        B.   Discussion

        Taco Bell seeks summary judgment on Evans's claims on a
number of theories.  First, Taco Bell argues that Evans cannot
show that it breached any duty to her in the ways alleged in the
complaint and therefore cannot recover in negligence.  Taco Bell
also argues that, even if Evans did have some evidence of such a
breach, she has no proof that she suffered any compensable injury
as a result.  Taco Bell contends that Evans's strict liability,
breach of warranty, and Consumer Protection Act claims cannot
succeed for lack of evidence that the food she purchased from the
Derry Taco Bell was defective.  Finally, Taco Bell argues that it
does not owe any fiduciary duty to Evans as a matter of law.

11

1.   The Negligence Claim

Evans's objection to Taco Bell's summary judgment motion sets forth a detailed recitation of evidence that she believes demonstrates breaches of duty by Taco Bell.  Specifically, Evans argues that, at the Derry restaurant, Taco Bell permitted employees to handle food with bare hands, rather than requiring them to wear gloves for that purpose; failed to implement or enforce appropriate hand-washing procedures; and inadequately trained the employee who contracted Hepatitis A about the perils of the disease.  Mem. Opp'n Mot. Summ. J. §§ II.B, D.[7]

The court will assume for purposes of this order that genuine issues of material fact exist as to whether Taco Bell breached its duties in the ways Evans asserts.  To survive summary judgment on her negligence claim, however, Evans must also show a genuine issue of material fact as to whether any of those alleged breaches proximately caused the injuries she complains of.  See, e.g., Brookline Sch. Dist. v. Bird, Inc., 142 N.H. 352, 356 (1997); Doucette v. Town of Bristol, 138 N.H. 205, 210 (1993).  A defendant's negligent conduct is the proximate cause of the plaintiff's injury when the injury would not have occurred but for the conduct, i.e., was its cause-in-fact, and

---

[7]Evans's brief in opposition to the summary judgment motion does not contain any Section II.C.

the conduct was a substantial factor in bringing about the
injury, i.e., was its legal cause.  Carnigan v. N.H. Int'l
Speedway, Inc., 151 N.H. 409, 414 (2004); Estate of Joshua T. v.
New Hampshire, 150 N.H. 405, 407–408 (2003).

Despite its considerable length, Evans's objection to the
summary judgment motion largely ignores Taco Bell's arguments
that she has no proof linking its alleged negligence to her
claimed injuries.  Indeed, the objection does not advance any
argument whatsoever as to how Taco Bell's allegedly derelict
handwashing practices or training of the Hepatitis A–stricken
employee contributed to Evans's claimed injuries.  Mem. Opp'n
Mot. Summ. J. §§ II.B.3.  Evans does contend that Taco Bell's
failure to require employees at its Derry location to wear gloves
when handling food "increased the risk of transmission of the
Hepatitis A virus . . . to patrons [there] during February 2004
thereby necessitating the inoculation and intervention on behalf
of those patrons . . . ."  Mem. Opp'n Mot. Summ. J. at 18–19.
Because she and her family received inoculations at one of the
clinics provided for that purpose, she suggests that Taco Bell's
breach caused injury to her in the form of the accompanying pain.

As support for this theory, Evans relies solely on a
February 27, 2004, e–mail message which appears to have been
distributed to members of the Department's "outbreak team."  This

13

e-mail reported that employees of the Derry Taco Bell were not wearing gloves while preparing food or serving it to patrons and that the infected worker had been performing these tasks while suffering from symptoms of Hepatitis A.[8]  The e-mail also noted that "hygiene techniques included the use of a hand sanitizer," but that the federal Center for Disease Control (the "CDC") had indicated that a sanitizer should not be used in place of gloves. Hutchins Aff. ¶ 2, Ex. 8 at 8.  The e-mail goes on to state that one "Dr. Talbot consulted with the CDC for this situation and determined that it was recommended that the intervention consist of immune globulin (IG) clinics to be implement [*sic*] for potentially exposed patrons."  Id. at 6.

Evans suggests that this e-mail creates a genuine issue of material fact as to whether the Department decided to recommend inoculations for those who had patronized the Derry Taco Bell during the relevant period based on the conclusion that the restaurant did not make its employees wear gloves while handling food.  The court disagrees.  Evans presents no developed argument as to how the e-mail, either directly or inferentially, shows that Taco Bell's alleged failure to require gloves at its Derry

---

[8]A report submitted by a Department official following his visit to the Derry Taco Bell that morning expressed his conclusion that "barehand contact was permitted" there.  Hutchins Aff. ¶ 2, Ex. 8, at 10-11.

store affected the Department's decision.[9]  She also has not come

forth with any other proof explaining the Department's actions.[10]

Standing alone, the e-mail simply reflects the fact that the

Department was aware, at the time it decided to recommend

inoculations, that the Derry employees apparently had not been

wearing gloves.  There is nothing to suggest that, had Taco Bell

mandated glove use at its Derry location, the Department would

have recommended an intervention short of inoculation for those

who had eaten there and thus spared Evans the associated pain.

She has therefore failed to adduce any proof tending to show that

---

[9]The e-mail itself also does not appear to constitute
admissible evidence within the meaning of Fed. R. Civ. P. 56(e).
Both the e-mail and the third-party statements within it appear
to be hearsay.  Furthermore, the e-mail has been submitted as an
exhibit to the affidavit of Evans's counsel, who does not purport
to have any personal knowledge which could serve to authenticate
the document or attest to circumstances of its creation which
might satisfy the requirements of any hearsay exception.  Because
Taco Bell has not moved to strike or otherwise objected to the
inclusion of the e-mail in the summary judgment record, the court
has nevertheless considered the document in ruling on the motion.
See Perez v. Volvo Car Corp., 347 F.3d 303, 314 (1st Cir. 2002).

[10]In fact, the only other record evidence touching on the
Department's decision consists of Greenblatt's affidavit, in
which he states that he made a recommendation to the Department
commissioner following an investigation that involved meetings
with the infected worker and her family, other Taco Bell
employees, community representatives, and others.  Greenblatt
makes no mention of what role, if any, the advice of the CDC or
even the discovery that the employees were not required to wear
gloves played in recommendation, let alone the commissioner's
decision to act on it.

Taco Bell's allegedly negligent conduct in this regard was the cause-in-fact of her claimed injuries.  Cf. Bronson v. Hitchcock Clinic, 140 N.H. 798, 801 (1996).

Evans has also failed to adduce any proof tending to show that Taco Bell's asserted breach was the legal cause of her complained-of injuries.  This showing, also essential to recovery in negligence, requires that the breach constitute "a substantial factor, rather than a slight one" in producing the injury. N. Bay Council, Inc., Boy Scouts of Am. v. Bruckner, 131 N.H. 538, 548 (1989) (citing Restatement (Second) of Torts § 431 cmt. a (1977)); see also Pillsbury-Flood v. Portsmouth Hosp., 128 N.H. 299, 304 (1986).  Even if it could be inferred, from the e-mail's reference to the apparent non-use of gloves among employees at the Derry Taco Bell, that this practice played a role in the Department's decision--an inference which, for the reasons just discussed, is not reasonable--there is no evidence to suggest that its role in the decision was substantial.  The e-mail therefore fails to create a genuine issue of material fact as to whether Taco Bell's alleged negligence in permitting its Derry employees to handle food with bare hands was the legal cause of Evans's claimed injuries.  See Island Shores Estates Condo. Ass'n v. City of Concord, 136 N.H. 300, 305 (1992) (affirming dismissal of negligence claim where threat of injury to plaintiff would

16

have existed regardless of defendant's alleged breach).

Evans's only other theory attempting to link Taco Bell's alleged negligence with any harm to her proceeds from the fact that she and her family began suffering from gastrointestinal and related symptoms soon after eating dinner purchased from the Derry Taco Bell on February 7, 2004.  She argues that the short period of time between the consumption of the food and the onset of the symptoms, together with the nature of the symptoms, creates a genuine issue of material fact as to whether the food caused the symptoms.[11]  Generally, however, "mere correlation between ingestion and illness is insufficient as a matter of law to establish causation."  Wilson v. Circus Circus Hotels, Inc., 710 P.2d 77, 79 (Nev. 1985); see also, e.g., Minder v. Cielito Lindo Rest., 136 Cal. Rptr. 915, 918 (Cal. Ct. App. 1977); Mann v. D.L. Lee & Sons, Inc., 537 S.E.2d 683, 684 (Ga. Ct. App. 2000); Griffin v. Schwegmann Bros. Giant Supermkts., 542 So. 2d 710, 712-13 (La. Ct. App. 1989); 4 Louis R. Frumer & Melvin I. Friedman, Products Liability § 48.21[2][a], at 48-123 (1960 & 2002 supp.).  As one court has remarked in reversing the denial of summary judgment for the defendant on a similar theory:

---

[11]Evans does not argue that the rash that appeared on two of her daughters one week after their Taco Bell meal could have been caused by the food as a matter of common experience, and the summary judgment record contains no evidence to that effect.

> The mere fact that the plaintiff became nauseous about
> one-half hour after consuming some of the [food
> obtained from the defendant] is insufficient to
> withstand the defendant's motion for summary judgment.
> There are many different causes of nausea, vomiting and
> stomach distress.  The plaintiff's evidence of impurity
> leaves her proof in the realm of speculation and
> conjecture.

Valenti v. Great Atl. & Pac. Tea Co., 615 N.Y.S.2d 84, 85 (N.Y.

App. Div. 1994) (internal quotation marks and citations omitted).

Evans has not come forward with any authority or argument

suggesting that New Hampshire would depart from this well-

accepted rule.[12]  Cf. Elliot v. Lachance, 109 N.H. 481, 485-86

(1969) (overturning verdict awarding damages allegedly caused by

---

[12]One of the New Hampshire cases Evans cites in support of
her theory merely stands for the proposition that expert
testimony is not required to demonstrate the proximate cause of
an injury when "the cause and effect are so immediate, direct and
natural to common experience as to obviate any need for an expert
medical opinion."  Reed v. County of Hillsborough, 148 N.H. 590,
592 (2002) (ruling that expert testimony might not be necessary
to show that elderly woman's fall on sidewalk caused abrasions).
As Valenti and like authorities have persuasively reasoned,
digestive problems often result from causes other than what was
just eaten, so an association between the two cannot be said to
be "immediate, direct, and natural to common experience."  In
Lamontagne v. Lamontagne, 100 N.H. 237 (1956), the other case
Evans cites on this point, "[t]he defendant raised no question
. . . as to the sufficiency of the evidence to establish causal
connection between the accident and the plaintiff's subsequent
complaints."  Id. at 238.  Instead, the defendant challenged the
jury's award of damages given the severity of the plaintiff's
injuries, and the court rejected this challenge based in part on
the absence of evidence of any other cause for them, because the
plaintiff had previously been in good health.  Id. at 238-39.
Lamontagne is therefore inapposite here.

defective product in absence of evidence that defect caused
claimed injuries because "[t]he mere fact that the plaintiff
suffered injuries is not sufficient to justify such a
conclusion") (internal quotation marks omitted).  She also has
not come forward with any evidence linking Taco Bell's products
to her symptoms apart from the temporal proximity between when
she consumed the food and when she began suffering from
gastrointestinal distress.  In fact, the only record evidence
suggesting the etiology of her symptoms at all consists of her
account of her doctor's statement that the family probably had
the flu.  Evans has failed to show a genuine issue of material
fact as to whether Taco Bell's asserted negligence proximately
caused her claimed symptoms.

Evans's objection to the summary judgment motion does not
advance any other theory connecting her other categories of
alleged damages to any misfeasance by Taco Bell.  This
shortcoming extends to her claim for fear and emotional distress
over her family's possible exposure to Hepatitis A.  Putting that
issue aside for the moment, however, the court notes that the
nature of this claim itself presents a serious problem.

The New Hampshire Supreme Court has held, in a case
rejecting a remarkably similar claim, that "regardless of
physical impact, in order to recover for emotional distress under

19

a traditional negligence theory, the plaintiff must demonstrate physical symptoms of her distress." Palmer v. Nan King Rest., 147 N.H. 681, 684 (2002). Despite the physical symptoms enumerated in her complaint, Evans has not responded to the summary judgment motion with evidence that her claimed emotional distress had any physical effects.[13] Instead, she contends that she "is entitled to recover emotion [*sic*] distress damages with [*sic*] establishing proof of physical manifestation," notwithstanding Palmer. Mem. Opp'n Mot. Summ. J. at 34.

The plaintiff in Palmer bit into a used band-aid while eating food prepared by the defendant, causing her "physical and mental revulsion, as well as extreme anxiety that she might have contracted an infectious disease." 147 N.H. at 682 (internal quotation marks omitted). After testing negative for both HIV and hepatitis, the plaintiff brought claims of negligence, strict products liability, and breach of warranty against the defendant. Id. She did not, however, claim to have suffered any physical

---

[13]Nor does Evans assert a claim for negligent infliction of emotional distress. To recover under such a theory, a plaintiff must "demonstrate physical symptoms of [her] distress regardless of physical impact." O'Donnell v. HCA Health Servs. of N.H., Inc., ___ N.H. ___, 2005 WL 2152506, at *2 (N.H. Sept. 8, 2005) (emphasis added). The ensuing discussion, then, is confined to a claim of negligence which seeks damages for resulting emotional distress, rather than a claim of negligent infliction of emotional distress.

injury.  Id.  The trial court granted summary judgment for the
defendants on the ground that "there was no evidence that the
plaintiff had experienced any physical injury from her anxiety."
Id.  The supreme court expressly rejected the plaintiff's
contention on appeal that "because the 'band-aid' in her mouth
constituted physical impact, an emotional distress claim need not
be predicated upon physical symptoms of her anxiety."  Id. at
698.  In so holding, the court noted that it had refused the same
argument in Thorpe v. New Hampshire, 133 N.H. 299 (1990), where
the plaintiff, like Palmer, had also suffered a physical impact
but had not alleged any physical injury.  147 N.H. at 684.

      Evans seeks to distinguish Palmer and Thorpe in the first
instance on the ground that, in addition to her alleged emotional
distress, she does claim damages for the physical injury she
suffered in receiving the immunoglobulin injection.[14]  As Taco
Bell points out in its reply brief, however, Evans does not
assert that her claimed emotional distress resulted from her
inoculation, but rather from her ingestion of food which she
later learned could have potentially been contaminated with

---

      [14]Evans also seeks to distinguish these cases on the ground
that they did not consider the availability of damages for
emotional distress under products liability and breach of
warranty theories.  For reasons that will appear, the court need
not address this argument.  See Parts II.B.2-II.B.3, infra.

Hepatitis A.  Because her alleged emotional distress did not follow from any physical injury, Evans's negligence claim suffers from the same fatal defect as those of the plaintiffs in <u>Palmer</u> and <u>Thorpe</u>:  it seeks damages for emotional distress unaccompanied by either physical injury or physical symptoms. The fact that she also seeks damages for physical injury which did not itself produce her claimed emotional distress does not entitle her to recover in spite of the rule laid down in those cases.[15]

An examination of the genesis of the rule in New Hampshire makes this point clear.  In <u>Chiuchiolo v. New England Wholesale Tailors</u>, 84 N.H. 329 (1930), the court scrutinized the rule in some jurisdictions "disallowing recovery for the consequences of fright caused by negligence when there is no physical impact." <u>Id.</u> at 332.  Recognizing the rule as a departure from general principles of tort damages, the court proceeded to consider whether any sound policy rationale existed to justify such an exception.  <u>Id.</u> at 333-34.  The court identified "[t]he only possibly adequate reason" in this regard as "that in the long run

---

[15]Furthermore, as previously discussed, Evans has failed to show a genuine issue of material fact connecting her claimed physical injuries to Taco Bell's allegedly wrongful acts.  Even if her theory were correct as a legal matter, then, Taco Bell would still be entitled to summary judgment.

justice will be better promoted with . . . the exception, because
otherwise this would open a wide door for unjust claims, which
could not successfully be met." <u>Id.</u> at 334 (internal quotation
marks omitted).

After finding this rationale wanting, the court declined to
uphold the rule. <u>Id.</u> at 335. Nevertheless, the court held that

> If the rule is founded on policy, the argument for
> expediency, regarded as unsustained in cases of fright
> resulting in serious consequences, is maintained where
> there are no such consequences. A rule of liability
> would impose undue burdens and go beyond the practical
> needs of recovery for another's negligence. When there
> are no consequences of fright, the fright can be
> regarded only as a momentary and transient disturbance,
> and as either too lacking in seriousness or as giving
> too great an extension of legally wrongful conduct to
> warrant the imposition of liability.

<u>Id.</u> at 338. Many years later, the court explained the outcome in
<u>Chiuchiolo</u> as reflecting the fact that it "was not persuaded that
abolishing the 'impact rule' would cause a proliferation of
fraudulent claims and create liability disproportionate to
culpability." <u>Corso v. Merrill</u>, 119 N.H. 647, 655 (1979).
Instead, the <u>Chiuchiolo</u> court recognized that simply limiting
recovery to cases of emotional distress with "serious
consequences" would serve to mitigate such undesirable effects
while remaining "responsive to a fair sense of justice." 84 N.H.
at 335; <u>see also</u> <u>Young v. Abalene Pest Control Servs., Inc.,</u> 122
N.H. 287, 290 (1982) (Douglas, J., dissenting).

23

The rule allowing recovery for emotional distress marked by physical symptoms, then, rests on the assumption that the symptoms "guarantee that the claim is not spurious" just as well as physical impact does.  William Lloyd Prosser & W. Page Keeton, Prosser & Keeton on the Law of Torts § 54, at 362 (5th ed. 1984); see also Palmer, 147 N.H. at 683 (declining to revisit this assumption).  But physical injury can provide no such guarantee when it has not itself caused the emotional distress for which the plaintiff seeks recovery, but simply resulted from the same tortious conduct.  As Prosser and Keeton have explained, "[w]ith a cause of action established by the physical harm . . . it is considered sufficient assurance that the mental injury is not feigned."  Prosser & Keeton, supra, § 54, at 363; see also id. at 361 (noting that recovery is generally disallowed for "mental disturbance, without accompanying physical injury, illness or other physical consequences . . .") (emphasis added).  In the absence of such an assurance, whether in the form of physical injury or physical manifestation, New Hampshire law simply does not permit recovery for emotional distress.[16]

---

[16]As Prosser and Keeton note, some jurisdictions permit recovery for emotional distress based on other kinds of "special circumstances" which also serve to guarantee genuineness. Prosser & Keeton, supra, § 54, at 362; see also Young, 122 N.H. at 290.  Evans does not cite any such circumstances here.

Furthermore, even if New Hampshire did allow damages for emotional distress unaccompanied by physical injury or symptoms, Evans has still failed to link her alleged emotional distress to any negligent act on the part of Taco Bell.  To recover for emotional distress, like any other kind of damages, a plaintiff must show that they were proximately caused by the defendant's negligence.  E.g., Corso, 119 N.H. at 656; Chiuchiolo, 84 N.H. at 333.  Again, Evans charges that Taco Bell deviated from applicable standards of care by failing to require its employees at the Derry store to wear gloves, by failing to implement and enforce appropriate hand-washing policies, and by failing to train the infected employee about the perils of Hepatitis A. There is no evidence, however, that any of these failures contributed to Evans's anxiety over whether she or her family had contracted the disease by eating food from the Derry Taco Bell.

Indeed, there is no evidence that Evans even became aware of the allegedly derelict sanitation practices at the restaurant during the time she was living in fear of having been exposed to Hepatitis A.  Those practices therefore could not have caused or contributed to cause her claimed emotional distress as a logical matter.  Instead, as Evans herself suggests in her objection, her fear of having the disease arose "[s]ometime after learning that an employee at the Taco Bell had contracted hepatitis . . . ."

25

Mem. Opp'n Mot. Summ. J. at 38.  But Evans does not argue that Taco Bell breached any duty to her merely by having somebody infected with Hepatitis A work at one of its restaurants.  She has therefore failed to demonstrate a genuine issue of fact as to whether Taco Bell's asserted negligence caused her alleged emotional distress.[17]  See Pichowicz v. Hoyt, 2000 DNH 40, 2000 WL 1480445, at *3-*4 (D.N.H. Feb. 11, 2000) (denying claim for fear of contracting disease allegedly arising from consumption of water contaminated by defendant without proof that fear "substantially caused or contributed to by the contamination").

For the foregoing reasons, Evans has failed to demonstrate a genuine issue of fact as to whether Taco Bell's alleged breaches of duty, assuming that such breaches occurred, proximately caused her claimed damages.  Taco Bell is therefore entitled to summary judgment on Evans's negligence claim.

2.   The Strict Liability Claim

Evans acknowledges that, to recover on her strict liability theory, she must prove that "the product was in a defective condition (when it left the defendant's hands), the defect made

---

[17]For the same reason, Evans has also failed to demonstrate a genuine issue of material fact linking her family's expenses in getting tested for Hepatitis A to Taco Bell's asserted negligence.

the product unreasonably dangerous, and that the defect was the proximate cause of [her] injuries."  Mem. Opp'n Mot. Summ. J. at 38 (citing <u>Buckingham v. R.J. Reynolds Tobacco Co.</u>, 142 N.H. 822, 825–26 (1998), <u>McLaughlin v. Sears, Roebuck & Co.</u>, 111 N.H. 265, 267 (1971), <u>and</u> <u>Buttrick v. Lessard</u>, 110 N.H. 36, 39 (1969)). She proceeds to argue that she has avoided summary judgment on this claim by coming forward with evidence that the food she purchased from the Derry Taco Bell had been touched by the bare hands of an employee infected with Hepatitis A.  According to Evans, this alleged fact rendered the food both defective and unreasonably dangerous as required to hold Taco Bell strictly liable under New Hampshire law.  <u>See</u> <u>id.</u> §§ III.a––III.b.

Evans's objection, however, does not address how this claimed defect caused her any harm.  As discussed at length in the analysis of Evans's negligence claim, Part II.B.1, <u>supra</u>, the record discloses no genuine issue of material fact linking Taco Bell's alleged failure to require the employees at its Derry location to wear gloves with any of her claimed injuries. Thus, assuming, without deciding, that Evans has shown a genuine issue of material fact as to whether the food she purchased from Taco Bell was both defective and unreasonably dangerous, her strict liability claim still cannot proceed given the absence of evidence that the alleged defect caused her any injury.  As Evans

has acknowledged, causation is an essential element of this claim.  Taco Bell is therefore entitled to summary judgment on Evans's strict liability claim.  See Willard v. Park Indus., Inc., 69 F. Supp. 2d 268, 272-73 (D.N.H. 1999).

### 3.   The Breach of Warranty Claim

Evans also acknowledges that, insofar as she seeks recovery for personal injury under her breach of warranty theory, she must show that such damages "proximately result[ed] from the breach." Mem. Opp'n Mot. Summ. J. at 47 (citing N.H. Rev. Stat. Ann. §§ 382-A:2-714--715 and Xerox Corp. v. Hawkes, 124 N.H. 610, 616 (1984)); see also Elliot, 109 N.H. at 485-86.  Again, Evans argues that she has demonstrated a genuine issue of material fact as to whether Taco Bell breached implied warranties of merchantability and fitness for purpose by serving food handled by an employee infected by Hepatitis A while she was not wearing gloves, but offers nothing to connect this alleged breach to any of her claimed physical injuries.  Like Evans's negligence and strict liability claims, her breach of warranty claim cannot proceed in the absence of any such evidence.  See Willard, 69 F. Supp. 2d at 274; Elliot, 109 N.H. at 485-86.

Evans also argues that she can recover what she paid for the allegedly unmerchantable and unfit goods under her breach of

warranty theory.  N.H. Rev. Stat. Ann. § 382-A:2-714(2).  Her
complaint, however, does not claim the cost of the goods
purchased from Taco Bell as a category of loss sustained or
damages sought by Evans.  In fact, the complaint expressly states
that Evans "claims damages for physical pain, physical symptoms,
fear and emotional distress."  Compl. ¶ 24.  Evans does not
allege to have suffered economic losses of any kind in the
complaint, whether in setting forth her breach of warranty claim
or otherwise.  Cf. id. ¶ 25 (alleging that other class members
"may have claims for medical bills, lost wages, lost time from
school, and actual contraction of the Hepatitis A virus").
Moreover, at her deposition in this matter, Evans was asked,
"Other than what you paid for [the] blood tests, are there any
other out-of-pocket costs that you have occurred associated with
the allegations in this lawsuit?"  Evans Dep. at 63.  Her
response was, "I don't remember."[18]  Id.

     The First Circuit has held that a plaintiff's failure to
"implicate the relevant legal issues in his complaint" with
regard to a theory of recovery may prevent him from raising that

_____

     [18]Evans's initial disclosures in this matter, which Taco
Bell has submitted to the court together with its motion for
summary judgment, also make no reference to the cost of the food
or any other category of economic damages.  Cf. Fed. R. Civ. P.
26(a)(1)(C) (requiring "a computation of any category of damages
claimed by the disclosing party . . . .")

theory in response to summary judgment.  McLane, Graf, Raulerson & Middleton, P.A. v. Rechberger, 280 F.3d 26, 38 (1st Cir. 2002); accord, e.g., Opals on Ice Lingerie v. Bodylines, Inc., 2002 WL 718850, at *4 (E.D.N.Y. Mar. 5, 2002) ("courts have consistently ruled that it is inappropriate to raise new claims for the first time in opposition to summary judgment") (quotation marks omitted).  As another district court in this circuit has recognized, this rule is necessary because "[f]airness dictates that the defendant[] be given a minimum degree of forewarning as to the underlying basis of the relief sought."  Ocaso, S.A., Compania de Seguros y Reaseguros v. P.R. Mar. Shipping Auth., 915 F. Supp. 1244, 1253 (D.P.R. 1996).  Accordingly, Evans's failure to mention, either in her complaint or in providing discovery as to her damages, that she was seeking to recover the cost of purchasing the allegedly unmerchantable and unfit goods prevents her from avoiding summary judgment by claiming those damages now. Taco Bell is therefore entitled to summary judgment on Evans's breach of warranty claim.

### 4.   The Consumer Protection Act Claim

New Hampshire's Consumer Protection Act prohibits, in relevant part, "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."  N.H. Rev.

Stat. Ann. § 358-A:2.  Evans suggests that Taco Bell engaged in such behavior through its "[l]ocal advertising," which gave her the "expect[ation] that the Derry restaurant operated in compliance with state food handling and safety requirements." Mem. Opp'n Mot. Summ. J. at 51.  Although the discussion of the Consumer Protection Act claim in Evans's objection does not say how this expectation was defeated, the court assumes that, once again, she believes Taco Bell acted unfairly and deceptively by allowing the employees at its Derry location to handle food with their bare hands in spite of the statements in Taco Bell's advertising.  Taco Bell argues that these circumstances do not amount to a violation of RSA 358-A:2.  The court agrees.

As Evans recognizes, "'[t]o be actionable [under RSA 358-A:2], the objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'"  Mem. Opp'n Mot. Summ. J. at 51 (quoting Anheuser-Busch, Inc. v. Caught-on-Bleu, Inc., 2003 DNH 127, 2003 WL 21715330, at *6 (D.N.H. Jul. 22, 2003), aff'd, 105 Fed. Appx. 285 (1st Cir. 2004), cert. denied, 125 S. Ct. 1639 (2005)) (further internal quotation marks omitted).  The New Hampshire Supreme Court has held that the statute's prohibition extends to misrepresentations made in the course of a business transaction.  Snierson v. Scruton, 145 N.H. 73, 81 (2000)

31

(applying RSA 358-A:2 to real estate agent's false statements about property on which plaintiffs reasonably relied in deciding to buy it).  Evans also points out that RSA 358-A:2 itself defines deceptive acts or practices to include "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, [or] benefits . . . that they do not have" and "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another."  N.H. Rev. Stat. Ann. §§ 358-A:2, V <u>and</u> VII.

Although Evans hints at a misrepresentation theory in her affidavit submitted in response to the summary judgment motion, she does not relate any statement by Taco Bell that its food meets the rigors of "state food safety and handling requirements" or, for that matter, any particular standards.  Instead, she claims to have developed an expectation to this effect "based, in large part, on representations made by Taco Bell in its national, regional and local advertising promoting the quality of Taco Bell restaurants generally and their food in particular."[19]  Evans

[19]Evans's counsel has submitted a printout from Taco Bell's website as a purported example of the company's advertising, though Evans herself does not claim that she has ever seen the site or even that it resembles the advertising to which she was exposed.  In any event, the website itself contains no representations that Taco Bell adheres to any particular standards in preparing its food.  Instead, the site makes general statements like, "we take great pride and care to provide you

32

Aff. ¶ 6.  Such a vague account of the content of Taco Bell's
advertising simply cannot support a Consumer Protection Act claim
based on Taco Bell's allegedly false statements.  See Kalik v.
Abacus Exch., Inc., 2001 DNH 192, 2001 WL 1326581, at *8-*9
(D.N.H. Oct. 19, 2001) (granting summary judgment against RSA
358-A:2 claim premised on misrepresentations in absence of
evidence of any material misstatements).  Because Evans does not
offer any other theory supporting this claim, Taco Bell is
entitled to summary judgment on it.

### 5.   The Breach of Fiduciary Duty Claim

Evans contends that a genuine issue of material fact exists
as to whether Taco Bell owed her a fiduciary duty, based on her
assertions that she placed "confidence in Taco Bell's assurances
of quality and safety" and that "[t]he preparation of the subject
food was exclusively in the control of [Taco Bell] at the time it
was served in February 2004."  Mem. Opp'n Mot. Summ. J. at 46.
The court agrees with Taco Bell that this argument is frivolous.

"'A fiduciary relationship . . . exists wherever influence

---

with the best food and dining experience in the quick service
restaurant business."  Mem. Opp'n Mot. Summ. J., Ex. 10, at 1.
Such general claims to superiority, known as "puffery," do not
amount to actionable representations.  See Clorox Co. P.R. v.
Proctor & Gamble Commercial Co., 228 F.3d 24, 38 (1st Cir. 2000)
(noting that puffery cannot support false advertising claim).

has been acquired and abused or confidence has been reposed and betrayed.'"  Lash v. Cheshire County Sav. Bank, Inc., 124 N.H. 435, 437 (1984) (quoting Cornwell v. Cornwell, 116 N.H. 205, 209 (1976)).  Contrary to Evans's sweeping construction, however, the term "confidence" in this context does not equate with simple reliance on another to perform a bargained-for service, but denotes "a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence."  Id. at 439 (emphasis added; internal quotation marks omitted).

Thus, fiduciary duties have been recognized as running from trustee to beneficiary, from guardian to ward, from agent to principal, from attorney to client, and among partners. Restatement (Second) of Trusts § 2 cmt. b (1959).  It is obvious that the relationship between a fast food restaurant and its patrons is not of this character, even if the patrons have come to depend on the restaurant for quality meals.  Cf. Schneider v. Plymouth State Coll., 144 N.H. 458, 462 (N.H. 1999) (recognizing college's fiduciary duty to student to prevent sexual harassment by faculty because "[t]he relationship between students and those that teach them is built on a professional relationship of trust and deference, rarely seen outside the academic community").  Evans does not provide any authority to the contrary.  Taco Bell

34

is therefore entitled to summary judgment on her breach of
fiduciary duty claim.

### 6.   The Remaining Claims

Evans asserts claims entitled "vicarious liability" and
"enhanced compensatory damages" as separate counts of her
complaint.  Given the absence of a genuine issue of material fact
tending to show any conduct on the part of Taco Bell's employees
for which Evans can recover her claimed damages, see Part II.B.1,
supra, the vicarious liability claim necessarily fails.
Similarly, as Evans acknowledges, enhanced compensatory damages
are just that, i.e., "'simply the actual damages incurred,
estimated by the more liberal rule that prevails in the case of
malicious wrongs.'"  Mem. Opp'n Mot. Summ. J. at 52 n.11 (quoting
Nollet v. Palmer, 2002 DNH 136, 2002 WL 1674379, at *2 (D.N.H.
July 18, 2002)) (further internal quotation marks omitted).
Because Evans has not shown a genuine issue of material fact as
to whether Taco Bell's allegedly wrongful actions caused her
claimed damages, she cannot recover enhanced compensatory
damages.  Accordingly, summary judgment must enter on these
claims as well.  Taco Bell's motion for summary judgment is
therefore granted in its entirety.

III. <u>Taco Bell's Motion for Sanctions</u>

　　　Finally, Taco Bell seeks sanctions against Evans and her
counsel under Fed. R. Civ. P. 11(c)(1)(A) on the ground that her
"Rule 56(f) Objection to Defendant's Motion for Summary Judgment"
was presented in violation of Fed. R. Civ. P. 11(b)(1).  Evans
objects to sanctions because, first, she was not provided the
opportunity to withdraw or correct her motion afforded by Fed. R.
Civ. P. 11(c)(1)(A) and, second, the Rule 56(f) objection was not
in fact presented "for an improper purpose, such as to harass or
cause unnecessary delay or needless increase in the cost of
litigation" as prohibited by Fed. R. Civ. P. 11(b)(1).

　　　　Evans filed her 56(f) objection on April 22, 2005.
Treating the objection as a motion, Taco Bell filed its own
objection to it, accompanied by a memorandum of law, on April 28,
2005.  The memorandum asked that Evans's "request for relief
under Rule 56(f) be denied, that plaintiff be ordered to file its
[*sic*] opposition to defendant's motion [for summary judgment] by
a date certain and all Court costs and attorney's [*sic*] fees be
taxed against the plaintiff."  Mem. Obj. Mot. for Relief at 6.

　　　More than two months later, the court issued an order
denying Evans's motion for 56(f) relief.  2005 DNH 104, 2005 WL
1592984 (D.N.H. June 30, 2004).  Noting that Taco Bell had
requested fees and costs in its objection, the court stated:

> Insofar as Taco Bell seeks an order requiring Evans to
> pay its attorneys' fees incurred in connection with
> responding to the Rule 56(f) application, the request
> must be made through a separate motion.  Fed. R. Civ.
> P. 11(c)(1)(A); L.R. 7.1(a)(1).  Based on the foregoing
> analysis, however, it appears that Evans's Rule 56(f)
> request might have been presented "to cause unnecessary
> delay or needless increase in the cost of litigation"
> in violation of Rule 11(a)(b)(1).  This gives the court
> particular concern in light of the history of this
> litigation and the prior admonitions to Evans's counsel
> by both the magistrate and the court itself.
> Accordingly, if Taco Bell wishes to pursue the issue of
> sanctions against Evans's counsel in connection with
> the Rule 56(f) objection, it shall do so by motion
> pursuant to Fed. R. Civ. P. 11(c)(1)(A).  It is
> unfortunate that the resources of the court and the
> parties have had to expended on an issue that never
> should have been a problem in this case.

Id. at *7.  Taco Bell filed its motion for sanctions on July 13,

2005, asking that the court order Evans to pay the $3,131 in

attorneys' fees it claims to have expended in responding to the

request for Rule 56(f) relief.

Rule 11(c)(1)(A) states, in relevant part, that a motion for

sanctions "shall not be filed with or presented with the court

unless, within 21 days after service of the motion . . . . the

challenged paper . . . is not withdrawn or appropriately

corrected."  This provision establishes "a type of 'safe harbor'

in that a party will not be subject to sanctions on the basis of

another party's motion unless, after receiving the motion, it

refuses to withdraw that position."  Fed. R. Civ. P. 11 advisory

committee's note (1993).  Evans argues that, because Taco Bell

did not serve her with its motion for sanctions before filing it,
let alone twenty-one days in advance of that date, she has been
deprived of Rule 11(c)(1)(A)'s safe harbor and that, as a result,
the motion must be denied outright.  <u>See</u>, <u>e.g.</u>, <u>Brickwood
Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 389-90
(4th Cir. 2004) (en banc); <u>Elliot v. Tilton</u>, 64 F.3d 213, 216
(5th Cir. 1995); 2 James Wm. Moore <u>et al.</u>, <u>Moore's Federal
Practice</u> § 11.22[1][b], at 11-40 (3d ed. 1997 & 2002 supp.).

In response, Taco Bell acknowledges that Evans did not get
the benefit of the safe harbor provision, but rejoins that the
First Circuit has not interpreted Rule 11(c)(1)(A) as stringently
as other circuits have.  <u>See Nyer v. Winterthur Int'l</u>, 290 F.3d
456, 460 n.6 (1st Cir. 2002) (noting that, while motion for
sanctions in response to baseless motion to amend not served on
plaintiff's counsel before filing, he "had approximately three
months to reconsider and withdraw the motion to amend" before it
was denied as moot "but chose not to do so," and therefore "the
purposes of the safe harbor provision could no longer be
effectuated because [the attorney] had lost his opportunity to
reverse course"); <u>Silva v. Witschen</u>, 19 F.3d 725, 729 n.4 (1st
Cir. 1994) (treating defense attorney's comments to plaintiff's
counsel, in response to receiving copy of complaint before
filing, that suit was unjustified and defendants intended to seek

38

attorneys' fees, as "substantially equivalent warning" to safe
harbor).  Nyer, however, rejected the appellant's safe harbor
argument because he had failed to raise it in response to the
motion for sanctions in the district court, 290 F.3d at 460,
while in Silva the sanction was imposed pursuant to the former
version of Rule 11, which lacked any safe harbor provision.[20]  19
F.3d at 727-29.  Thus, neither case squarely addressed whether
sanctions may be imposed on a motion that was not served at least
twenty-one days before filing, as occurred here.  In this court's
view, the dicta from Nyer and Silva cannot overcome the weight of
contrary authority and the clear language of Rule 11(c)(1)(A)
itself.  Because Evans did not get the benefit of the safe harbor
provision, Taco Bell's motion for sanctions must be denied.

In the absence of this procedural problem, however, the
court would not hesitate to impose the sanctions requested by
Taco Bell.  Despite submitting an eleven-page affidavit in
support of Evans's request for Rule 56(f) relief, her counsel,
Peter Hutchins, offered virtually no explanation of how the
discovery outstanding at the time would have affected the outcome
of Taco Bell's motion for summary judgment.  2005 WL 1592984, at

---

[20]The Silva court nevertheless discussed the current version
of Rule 11 because the appellant argued that it should be
retroactively applied in his case.  19 F.3d at 727-29.

*6-*7.  Furthermore, the objection itself contained the
assertions that transcripts of depositions which had already been
taken at that point would not be available until twenty days
later, and that Evans's counsel should thereafter be entitled to
an additional two or three weeks to review and index the
transcripts before having to respond to Taco Bell's summary
judgment motion.  The court has previously noted that these
assertions strike the court as disingenuous.  Id. at *6 & n.14.
Because three of the four depositions forming the basis of the
request for Rule 56(f) relief had already occurred before the
request was filed, and because Hutchins could come up with no
explanation as to the relevance of any of the other discovery
outstanding at that point, the apparent purpose of the request
was to cause unnecessary delay in the resolution of the motion
for summary judgment, or to cause Taco Bell to expend additional
attorneys' fees in responding, in violation of Rule 11(b)(1).

Furthermore, Evans's lawyers on a number of occasions during
this litigation have engaged in conduct that included a chronic
disregard for the Local Rules and motion practice that the
magistrate has deemed frivolous.  See note 1, supra, and
accompanying text; 326 F. Supp. 2d 214, 219 (D.N.H. 2004)
(recounting magistrate's rulings on Evans's first motion to
remand and her objection to the pro hac vice admission of one of

40

Taco Bell's attorneys).  In light of this history, and the nature of the Rule 11 violation itself, payment of Taco Bell's attorneys' fees in responding to the request for Rule 56(f) relief would have been the appropriate sanction.  As this court has stated time and time again, all counsel who appear before it are expected to be familiar with the Local Rules and to conduct their practice in conformity therewith.  When counsel fail to do so, the result is often the unnecessary expenditure of time and resources by the court, opposing counsel, and the parties.

## Conclusion

For the foregoing reasons, Taco Bell's motion for summary judgment (document no. 43) is GRANTED.  Taco Bell's motion for sanctions (document no. 58) is DENIED.  Taco Bell's motion to strike (document no. 63) is DENIED as moot.  Evans's motion for class certification (document no. 47) is also DENIED as moot. The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 23, 2005
cc:  Bruce G. Tucker, Esquire
     Andrew W. Serell, Esquire
     Peter E. Hutchins, Esquire